## Solomon Close et al., Plffs. in Err., *v.* Noel H. Benjamin.

A voluntary conveyance to a child by a father who is indebted at the time is not *ipso facto* fraudulent and void, under the statute of 13 Eliz. chap. 5. If the grantor had other property at the time or was otherwise of sufficient ability to pay all his debts, it is for the jury to say whether there was any design to defraud creditors, and if there was not, the conveyance is valid.

One who was sick in bed and expected to die was advised by counsel to convey his property by deed instead of devising it by will. Accordingly he conveyed his real estate to his son and died. He had at the time more than enough money in bank to pay his debts. After his death a creditor (who had obtained, after the conveyance, judgment for a pre-existing debt) sold the land in execution as the property of the father, bought it in and brought ejectment for it against the son. *Held,* that the question whether the conveyance was intended to defraud creditors or not was properly submitted to the jury.

(Argued February 28, 1887. Decided March 14, 1887.)

January Term, 1886, No. 179, E. D., before MERCUR, Ch. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Error to the Common Pleas of Berks County to review a judgment on a verdict for the defendant in an action of ejectment. Affirmed.

The facts as they appeared at the trial before SASSAMAN, P. J., were stated in his charge to the jury, which was as follows:

NOTE.—If sufficient property be retained by a grantor to satisfy his indebtedness, the conveyance is good, though voluntary. Collins v. Cronin, 117 Pa. 35, 11 Atl. 869; Wilson v. Howser, 12 Pa. 109; Miller v. Pearce, 6 Watts & S. 97; Posten v. Posten, 4 Whart. 27.

You have been sworn to try an issue joined between Solomon Close and George W. Kershner as plaintiffs, and Noel H. Benjamin, defendant. It is an action of ejectment, and is brought for the recovery of the possession of a small parcel of ground situate on the northwest corner of Thirteenth and Cotton streets, in this city of Reading. It is said to contain 76 feet front on Cotton street, and on its western line to extend back 150 feet, and on the eastern line towards the north to extend back, I think, 170 or 180 feet. It is the parcel of land described in the plaintiffs' writ.

It appears that on the 3d day of April, 1875, one J. O. Thomas and wife conveyed two lots, as they are called, 38 feet front on Cotton street, to H. D. Benjamin; and that on the 1st day of April, 1875, A. W. Viven conveyed two lots of like front on Cotton street to H. D. Benjamin; and thus on the 3d of April, 1875, H. D. Benjamin became the owner of this entire lot. H. D. Benjamin appears at the time to have been in litigation with one Zell, who survived one Eshelman, and who had a claim against him which was then being litigated. That litigation continued and by the records given in evidence it appears that in 1876 there was a verdict rendered in favor of the defendant, H. D. Benjamin.

Some time thereafter, in December of that year or the next year, H. D. Benjamin received an injury, and after he had received that injury he seemed to have been physically incapable of being communicated with, to any large extent, and the case went to the supreme court where it was languishing until 1879, when it was decided in favor of Zell. The judgment which had been rendered on the verdict in favor of H. D. Benjamin became thereby reversed in the supreme court. It then came back again into this court in 1879 and was prosecuted to a verdict again, which resulted in favor of Mr. Zell. When this last verdict was obtained, there was a motion made for a new trial, and the case hung in this court on that motion from 1879 until the 31st of January, 1881. On that day, if I understand the evidence rightly, there was an attachment execution issued and served on Garret B. Stevens; a fi. fa. was issued at the same time. The property in question was levied upon and was condemned. It was afterwards sold on a *vend. ex.* which was issued subsequently to the fi. fa., and the property was sold to H. W. Bland for $5, which was appropriated to the payment of costs. In pursuance of that sale on the 23d of April, 1881, Sheriff Gerhard, of

this county, made a deed in favor of H. W. Bland, and Mr. Bland on the 3d day of August, 1881, decided two of those lots.

It seems that this property was regarded as four lots, each having a front apparently of 19 feet; and two of those lots were deeded by Mr. Bland, the purchaser, to Thomas Zell. Mr. Bland was acting as the attorney in the former suit for Mr. Zell, and also in this execution; and Mr. Bland, as attorney, bought for his client, and afterwards conveyed it to him in one deed, dated August 3, 1881, and other deeds dated October 24, 1882, so that the property vested in Thomas Zell, in 1882, in October.   Before that time, on the 7th day of September, 1881, Thomas Zell and wife conveyed the lots first conveyed to him by Mr. Bland, to one Hinchman; and he, on the 13th day of December, 1883, reconveyed these lots.   It seems that Thomas Zell then became the owner of these two lots, and on the following day he and his wife conveyed them to Solomon Close and George W. Kershner, the plaintiffs in this case.

The case standing in this form, without anything else being shown, the title of this property would vest in the plaintiffs; and upon the plaintiffs' prima facie case there would be no question but that the jury would have to render a verdict in favor of plaintiffs.   A plaintiff in ejectment must always recover on his own title.

When the case rested there and the plaintiffs were upon their prima facie case entitled to your verdict, the defendant said that so far as the plaintiffs' showing was concerned, their case could not be sustained in law.   The defendant shows that there was a conveyance made by H. D. Benjamin while he was in possession of these lots on the 4th day of September, 1877, to one Noel H. Benjamin, the defendant herein.

H. D. Benjamin was the defendant in the Zell suit; but in the suit here Noel H. Benjamin is the party against whom the ejectment is brought, who is admitted to be in possession of these lots. [H. D. Benjamin and wife made a deed to Noel H. Benjamin, on the 4th of September, 1877, which was a long time before there was a judgment entered in the case of Zell against Benjamin,—that first suit spoken of here as having terminated in 1879.   The effect of the judgment of the supreme court in 1879 was the award of a *venire facias de novo,* which resulted in a new trial.   This case, therefore, remained undetermined in 1879; and this deed of H. D. Benjamin to Noel H. Benjamin

was made two years prior to 1879, and having been given about two years prior thereto, the defendant having a prior deed from H. D. Benjamin to the deed of the plaintiffs, instead of the plaintiffs being entitled to a verdict at that point the defendant, upon his own showing, would be entitled to a verdict at the hands of the jury.]

The plaintiffs say that there is such a deed, but answer that the deed is void in law; and for that purpose they opened their rebutting case by calling Mr. Yarrington, who went along to the execution of the Noel H. Benjamin deed and witnessed it. There was no consideration passed for the deed in the presence of Mr. Yarrington, nor was the deed delivered in his presence. So far as his evidence is concerned he knew very little about the deed transaction.

Mr. Snyder is called next. He testified that he was a notary public at that time, and that he took the acknowledgment of the deed of H. D. Benjamin to Noel H. Benjamin; that he saw no money pass, and no deed delivered there, and that Noel H. Benjamin was not present. There was therefore nothing elicited on the part of the witnesses, Yarrington and Snyder. But to further maintain their contention they called Noel H. Benjamin, who said he was a son of H. D. Benjamin, had met with a severe accident and was very sick therefrom, and that after having received that injury he could not be out of bed for a long time; that he made a deed to him; while he was bedfast, on the 4th of September, 1877; that he gave no money for it; in fact was a voluntary conveyance.

By a voluntary conveyance is meant where one man makes a deed to another without giving anything for it. Where a man has debts at the time of making such a deed, he comes under the law which was enacted in England under the reign of Queen Elizabeth in the thirteenth year of her reign. It reads as follows, the law having been extended to this country: "Be it declared, ordained, and enacted, by authority of this present Parliament, that all and every feoffment, gift, grant, alienation, bargain, and conveyance of land, tenements, hereditaments, goods, and chattels or any of them by writing or otherwise, and every bond, suit, judgment, and execution at any time had or made sithence the beginning of the Queen's Majesty's reign that now is or at any time hereafter to be had or made to or for any intent or purpose hereafter declared and expressed, shall be

from henceforth admitted and taken (only as against that person or persons, his or their heirs, successors, executors, administrators, and assigns and every of them whose actions, suits, debts, accounts, damages, penalties, forfeitures, heriots, mortuaries, and reliefs by such guileful, covinous, or fraudulent devices and practices, as is aforesaid are, shall, or might be in any way disturbed, hindered, delayed, or defrauded) to be clearly and utterly void, frustrated, and of none effect. Any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding."

The sum and substance of this act is that where there is a fraudulent conveyance, or where there is a conveyance with intent to defraud, hinder, or delay creditors from collecting their debts, all such conveyances of land are void; and it has been held in England as well as in the state of Pennsylvania, more strenuously in New York, and I believe in several of the other states where it is considered that the statute of Elizabeth is in force, that where there is a deed of this kind it is absolutely void; as against creditors it is also held to be absolutely void.

Where the deed is made with the intent to defraud, hinder, and delay or defeat creditors it has been held to be void. This matter has been before our higher courts very frequently. Where a man has outstanding debts, makes a conveyance of his property so that his creditors may be hindered, delayed, or defeated in the collection of their claims, the conveyance is absolutely void as to those creditors. If a man is indebted to another, and at the time makes a deed to another without consideration or without a valuable consideration, and the main intent and purpose is to defeat his creditors, such deed is void, although the land may have a record title in the name of another.

If an execution is issued against a property to sell the right, title or interest of the man who was the owner, and he conveyed it thus to get it out of the reach of his creditors, such a sale brings a good title to the man buying and the man in whose favor the deed was made.

[Where there is a voluntary conveyance without consideration, the law presumes, in the absence of other proof, that there was a present intent to defeat creditors; but such a presumption is an inference from the facts supposed to exist, and is only what in the law is called *presumptio juris,* which may be rebutted by other and competent evidence.

It is not of that class of presumptions which in the laws are called *presumptio juris et de jure,* which are said to be unrebuttable and unassailable in the law.]

For instance: where one man is indebted to another, either of record or under seal, and twenty years have run without there being a renewal of the debt or a new promise, the law presumes that debt to have been paid, because it is reasonable to suppose that a man would not allow a debt to hang that long without having had satisfaction. Under the statute of limitations the presumption is that there was payment made; and this limitation of the law is made to help sustain the presumption.

[These presumptions in the law are intended for various uses: to prevent improper litigations, improper disputes, or prevent frauds that might be perpetrated if there were no such statutes. We say to you that while this is only one of that class of presumptions, the law presumes that it was with the intent to defeat creditors, and it is permissible for the courts to admit evidence to show that it was not the intent.]

When the plaintiffs rested their case they were entitled to a verdict at your hands. The defendant, however, offered in evidence a deed which is absolute upon its face and is recorded, and which changes the case. [At the point where the defendant rested the defendant would have been entitled to your verdict for the land described in the writ; but the plaintiffs rebutted that evidence by calling the witnesses, Yarrington, Snyder, and Noel H. Benjamin, who say it was a voluntary conveyance to him without a consideration. So far as Noel knew, his father had no other property to pay any debts; that is, there was no other visible property or real estate left to pay any debts with. At that time, there being no real estate and no visible property for the payment of debts, the claim, as contended for by the plaintiffs, was in full force and effect. Of course it was in litigation. The one party claimed a considerable amount of money which was eventually recovered, and the other party said it was not owing at all; but as the final result turned out, there was a judgment for $2,350, so that the final event of the suit would show there was an actual existing debt. Where such is the case the testimony of Noel H. Benjamin becomes important. The law raises the presumption, because there was an outstanding debt at the time H. D. Benjamin conveyed this property without any payment of money, that it was a fraudulent conveyance, be-

cause if it existed, they, the plaintiffs' grantors, or those before them, would have been hindered or delayed in the collection of their debt, and because they would have been hindered or delayed in the collection of their debt, the law would presume that it was fraudulent and would make the deed void.

This being however a *presumptio juris* it may be rebutted; and in order to continue the contention of the parties the defendant turns around and rebuts the rebutting case of the other party again.]

Before proceeding further with the case as it stood after these parties were examined with their record evidence, showing the disposal of the one property to Mr. Stevens, I want to say to you that the plaintiff would again be entitled to your verdict for the lands described in the writ.

There is where the hitch in the case comes; up to this time the one or the other party would be entitled to a verdict.

First, the plaintiffs and then the defendant is entitled to a verdict; and then there is another showing which entitles the plaintiffs to a verdict.

[The defendant comes in again and asks leave to rebut, which is done by the evidence of H. D. Benjamin, from whom it was learned, as well as in part from the cross-examination of Noel H. Benjamin and Mr. Stevens, that at the time the conveyance was made to Noel H. Benjamin, H. D. Benjamin was sick in bed and expected to die, having received a very painful and serious injury; and being in expectation of dying, Geo. F. Baer, a member of this bar, was called in to consult as to the making of a will and disposing of this property in contemplation of death, and while he was called, in speaking about a will, the question arose as to the expense of a will being made here. Mr. Benjamin, as soon as he could move with his family, intending to go to the state of New York, and upon the advice of Mr. Baer, instead of making a will, conveying this property; there was a conveyance made transferring the property to these two children, the one on Cotton street to the son Noel, and the other on Fifth street to his daughter Ella, which was soon after, in 1878, conveyed to G. B. Stevens, who in part of the consideration gave a mortgage for $4,500.

It is in evidence that before the failure of the Bushong Bank, and at the time of these conveyances, H. D. Benjamin had other personal properties; that he had $10,000 in the Bushong Bank

and that he had other money outstanding. No one that I have heard has contended, or would be able to contend successfully in the law, that if this property was conveyed for the purpose of hindering, defeating, defrauding, or delaying the collection of the Zell claim against H. D. Benjamin, or any other, that these two deeds would not be fraudulent. In contemplation of law, if it was for that purpose, they would have been fraudulent.

If there was an entire absence of purpose to defraud, and done under the advice of counsel, the party having enough and ample property, as Benjamin testified, and that property was not removed and it was forthcoming at the time when the judgment was really recovered and finally settled, I cannot say to you as a matter of law, that such a transaction would be fraudulent. While a man must be honest and just before he is generous, a man is the absolute controller of his own property, and he can make just such disposition of it as he sees proper, either by will or conveyance instead of a will, so long as he pays his debts; and a man must always pay his debts before he gives his property away. If in this case you are satisfied under this final rebutting evidence of the defendant that H. D. Benjamin had other means and other property, and had made provisions for the payment of this debt, whether the money was in the hands of the Bushong Bank, and if that failed and the other money remained which he kept under his control or he kept the control of his property as long as he would live, and if you believe it was really so and there was an entire absence of purpose and intent in the transaction to hinder, delay, and defraud the creditors he had, no creditor can come in and say that the purpose was to defeat and defraud].

It is a question for you. [If it was not for this rebutting evidence the court would have been obliged to say to you that the verdict would have to be in favor of the plaintiffs. If you believe this rebutting evidence to be true: that there was money enough in the hands of Benjamin, and that he was ready and willing to pay at that time, without wishing to hinder, delay, and defraud, your verdict will be in favor of the defendant. If you believe that under the rebutting evidence there was an entire absence of purpose which in effect would hinder or delay the creditors, then it would not be proper to take away this property from Noel H. Benjamin and give it away to others.]

If you believe the other way, that the case stands as it was presented by the plaintiffs in their rebutting evidence, then the plaintiffs are entitled to your verdict for the property described in the writ. If you believe that there was a provision made here, and the provision was sufficient at the time the conveyance was made, and there was ample money in the hands of this man outside of the conveyance of the properties, and there remained enough until this judgment became finally conclusive to pay it, your verdict would be in favor of the defendant.

If you believe there was an absolute fraud in the conveyances, your verdict will be in favor of the plaintiffs for the property described in the writ.

The court then read and answered the plaintiffs points as follows:

1. If the jury believe that at the time the lots in suit here were sold by the sheriff on the judgment of Thomas Zell against Hiram D. Benjamin, he, Hiram D. Benjamin, had removed to the state of New York and had no real estate or other property in the state of Pennsylvania in his name, which could be taken in execution to pay Zell's judgment, and if the jury find that Noel H. Benjamin paid nothing to his father, Hiram D. Benjamin, for the lots in suit here, the sheriff's sale passed a perfect title and the verdict must be for the plaintiffs, Solomon Close and George W. Kershner.

*Ans.* We cannot say so, as the case will be submitted to the jury.

2. There is no evidence in this case that Hiram D. Benjamin had any property in his own name at the time of the sheriff's sale which could have been levied upon to pay Thomas Zell's judgment; and it being the uncontradicted evidence in the case that his conveyance of the lots in suit here to his son, Noel H. Benjamin, the defendant, was voluntary and without valuable consideration, the conveyance from Hiram D. Benjamin to the defendant was fraudulent in law and void and the verdict must be for the plaintiffs, Solomon Close and George W. Kershner.

*Ans.* I cannot say so; the case will be given to you for determination.

3. Under all the evidence in this case the verdict should be for the plaintiffs, Solomon Close and George W. Kershner.

*Ans.* Refused.

Verdict and judgment were for the defendant.

The assignments of error specified the admission in evidence of the deed of September 4, 1877, from Hiram D. Benjamin and wife to the defendant; the attachment execution; and testimony as to the disposition of purchase money by Stevens; and also specified the portions of the charge inclosed in brackets and the answers of the court to the plaintiffs' points.

The assignments of error also complained that the charge did not fairly submit the facts to the jury.

*D. E. Schroeder, B. F. Dettra,* and *H. Willis Bland,* for plaintiffs in error.—The plaintiffs are purchasers for value. The transfer to Noel H. Benjamin was as to Mr. Zell's judgment, in effect, a legal fraud.

On September 4, 1877, the date of the voluntary conveyance to the defendant, Thomas Zell was a creditor of Hiram D. Benjamin, defendant's voluntary grantor.

On January 31, 1881, a judgment was obtained against Benjamin, by Thomas Zell.

The real estate described in plaintiffs' writ was sold under said judgment as the estate of Hiram D. Benjamin to said Zell, and the plaintiffs have the title of the sheriff's vendee.

The defendant offered in evidence a deed dated September 4, 1877 (admitted by his counsel in his opening to be voluntary), from Hiram D. Benjamin, for the land described in the writ, for the purpose of showing that the title in said premises was in him.

As the indebtedness existed at the time of the voluntary conveyance, and as the defendant did not offer to show by other proof that Hiram D. Benjamin had other property at the time to pay said indebtedness, with the view of disproving the corrupt intent of delaying, hindering, and defrauding Zell, a creditor, the court should have rejected the offer, upon the ground that the fraudulent intent resulted as a conclusion of law. Shontz v. Brown, 27 Pa. 128.

Both of the writs were execution process; and the general rule is that you may have as many forms of execution as the law will afford, and may pursue them all at the same time until satisfaction be obtained on one of them. Pontius v. Nesbit, 40 Pa. 311.

A levy on and sale of real estate on a fi. fa. does not avoid an execution attachment issued with the fi. fa. Herriot v. Wagner, 9 Pittsb. L. J. 109.

Aside from this, after acknowledgment of sheriff's deed in open court, the title of the sheriff's vendee cannot be affected by mere irregularities, however gross. McFee v. Harris, 25 Pa. 102, and Spragg v. Shriver, 25 Pa. 282, 64 Am. Dec. 698; Crowell v. Meconkey, 5 Pa. 168; Mitchell v. Freedley, 10 Pa. 208.

In a question of fraud the validity of the conveyance from father to the son depends, not upon supplementary acts but upon the character of the contract when it was made. United States v. Mertz, 2 Watts, 406; Kepner v. Burkhart, 5 Pa. 479, 480.

Under § 2 of the act of April 15, 1869, P. L. 60, when either party to the record is called as if under cross-examination, they are subject to the same rules for examination as any other witness.

Where a witness is called by his adversary, as on cross-examination, under the act of April 15, 1869, § 2, leading questions may be put to him; and there may be drawn from him any facts or admissions which weaken his case and strengthen his adversary's.

The party so called is to be considered as if originally offered and examined on his own behalf. Brubaker v. Taylor, 76 Pa. 83.

Cross-examination should be confined to matters in regard to which the witness has been examined in chief, and to such questions as may show the bias and interest of the witness. Hopkinson v. Leeds, 78 Pa. 400; Hughes v. Westmoreland Coal Co. 104 Pa. 207; Fulton v. Central Bank, 92 Pa. 112; Floyd v. Bovard, 6 Watts & S. 75.

Evidence having reference to a transaction long after the conveyance, and not of the character of the contract at the time of the conveyance, and consisting only of declarations of a party charged with the fraudulent conveyance, is not admissible. United States v. Mertz, 2 Watts, 407–409.

The declarations offered in evidence must be concomitant with the principal act, as the mere result and consequences of the coexisting motives, in order to form a proper criterion for directing the judgment which is to be formed upon the whole conduct. 1 Greenl. Ev. § 110.

Statements of a party in his own favor, out of court, are hearsay. Id. § 99, note, 14th ed.

Every person is conclusively presumed to contemplate "the ordinary and natural consequences of his own acts." 3 Id. § 14.

In a question of fraud, the validity of a conveyance from a father to a son, depends, not on supplementary acts, but on the character of the contract when it was made. United States v. Mertz, 2 Watts, 406.

The statute of 13 Elizabeth makes "utterly void, frustrate, and of none effect," all conveyances and other recited instruments and acts, as against that person or persons, his or their heirs, executors, administrators, and assigns, and every of them, whose actions, suits, debts, accounts, damages, etc., by such guileful, covinous, or fraudulent devices and practices, as is aforesaid, are, shall or might be in any way disturbed, hindered, delayed, or defrauded. Robert's Digest, 296.

Fraud in law consists in acts, which, though not fraudulently intended, yet, as their tendency is to defraud creditors, if they vest the property of the debtor in the grantee, they are void for legal fraud, which is deemed tantamount to actual fraud, full evidence of fraud, and fraudulent in themselves, the policy of the law making the acts illegal. Hanson v. Eustace, 2 How. 688, 689. See note, 11 L. ed. 430; McKibbin v. Martin, 64 Pa. 356, 3 Am. Rep. 588.

Actual fraud is always a question for the jury; legal fraud, where the facts are undisputed or are ascertained, is for the court. Dornick v. Reichenback, 10 Serg. & R. 90; Avery v. Street, 6 Watts, 247.

A conveyance by a father to his sons, in trust for the payment of all the judgments on record against the grantor, and for his maintenance and that of the family, is void as to creditors. Johnston v. Harvy, 2 Penr. & W. 82, 21 Am. Dec. 426. See also McAllister v. Marshall, 6 Binn. 338, 6 Am. Dec. 458, in which a tacit agreement to vest a part of the property in trustees, for the benefit of the family, avoided the conveyance as to creditors who had not assented to the agreement.

In such a case the fraud is matter of law and should be so declared by the court. Geiger v. Welsh, 1 Rawle, 349; Hack v. Stewart, 8 Pa. 213.

A conveyance by one indebted, in trust to sell, the grantor re-

serving a power of appointment of the proceeds, is fraudulent as to a prior creditor recovering judgment after the grantor had appointed the proceeds to creditors. Mitchell v. Stiles, 13 Pa. 307; Whallon v. Scott, 10 Watts, 237; Sheerer v. Lautzerheizer, 6 Watts, 549; Hack v. Stewart, 8 Pa. 217.

A conveyance by one indebted, in consideration of a debt due, and the residue of the consideration secured by judgment bonds, payable within six years, which were intended to be applied to pay creditors, is fraudulent within the statute of 13 Elizabeth. Kepner v. Burkhart, 5 Pa. 478.

Bargains which are not ordinary sales to pay debts, but which are unusual and tie up a property out of the reach of creditors, preventing the collection of their debts in the ordinary course of law, are held to be against the statute. Hennon v. McClane, 88 Pa. 222.

A sale of all a man's property to his sons on bonds, not due for a long time, is invalid, on the ground of hindering and delaying. In such a case, the law determines the intent to be fraudulent on the face of the transaction, which, on its front, shows that it must necessarily prejudice the right of creditors; for otherwise it would be in the power of the debtor to impose his own terms of payment regardless of their rights. Kepner v. Burkhart, 5 Pa. 478; Johnston v. Harvy, 2 Penr. & W. 82, 21 Am. Dec. 426; Adlum v. Yard, 1 Rawle, 163, 18 Am. Dec. 608; Sanders v. Wagonseller, 19 Pa. 248.

The interest of a debtor in property fraudulently conveyed by him is, as regards benefit to himself, absolutely nothing; but as regards benefit to those attempted to be defrauded, is something tangible and substantial. For the benefit of these, the ownership remains in him, as a trustee *ex maleficio*. Englebert v. Blanjot, 2 Whart. 244; Moncure v. Hanson, 15 Pa. 391; Heath v. Page, 63 Pa. 122, 123, 3 Am. Rep. 533.

A voluntary conveyance is absolutely void as to existing creditors; whether it is void as to subsequent creditors depends upon intent and solvency. Preston v. Jones, 50 Pa. 66; Spirett v. Willows, 11 Jur. N. S. 70.

In a deed from a father to his son, if voluntary, the fraudulent intent results as a conclusion of law; if not voluntary, the fraudulent intent is to be established, if at all, as a matter of fact. Shontz v. Brown, 27 Pa. 128.

If the party be indebted at the time of the voluntary settle-

ment, it is presumed to be fraudulent in respect to such debts, and no circumstance will permit those debts to be affected by the settlement, or repel the legal presumption of fraud.

The presumption of law, in this case, does not depend upon the amount of the debts, or the extent of the property in settlement, or the circumstances of the party. There is no such line of distinction set up or traced, in any of the cases. Reade v. Livingston, 3 Johns. Ch. 500, 8 Am. Dec. 520.

The creditors in whose favor a fraudulent deed will be declared void must be those who would be defrauded if validity was given to the conveyance; but it does not follow that one whose claim originated before, but was established after, the conveyance, may not have been injured by it. Miner v. Warner, 2 Grant, Cas. 449; Mitchell v. Stiles, 13 Pa. 307.

To submit a fact, destitute of evidence, as one that may, nevertheless, be found, is an encouragement to err, which cannot be too closely observed or unsparingly corrected. Stouffer v. Latshaw, 2 Watts, 165, 27 Am. Dec. 297; Egbert v. Payne, 99 Pa. 244; Sartwell v. Wilcox, 20 Pa. 117; Newbaker v. Alricks, 5 Watts, 183; Whitehill v. Wilson, 3 Penr. & W. 405, 24 Am. Dec. 326.

Where the language of a charge as to the true character of the testimony tends to mislead the jury, it is error and a ground for reversal. Fawcett v. Fawcett, 95 Pa. 376.

It is the duty of the court, where it assumes to state the facts, to present them as fully on one side as on the other, so that the jury may not be misled. Burke v. Maxwell, 81 Pa. 153; Gehman v. Erdman, 105 Pa. 371.

A misdirection is ground of reversal, although no special instructions were asked. Garrett v. Gonter, 42 Pa. 143, 82 Am. Dec. 498; Washington Mut. F. Ins. Co. v. Rosenberger, 3 W. N. C. 16.

It is error to confine the attention of the jury to one view of the case, where there is more than one which they should consider. Garrett v. Gonter, 42 Pa. 143, 82 Am. Dec. 498.

The mere omission to charge upon a particular point for which there was no request is not assignable for error; yet if the language of the court, taken in connection with the circumstances of the case, may have misled them, it is ground for reversal. Bisbing v. Third Nat. Bank, 93 Pa. 82, 39 Am. Rep. 726; Penn-

sylvania R. Co. v. Berry, 68 Pa. 272; Stall v. Meek, 70 Pa. 181; Washington Mut. F. Ins. Co. v. Rosenberger, 3 W. N. C. 16.

*Jeff. Snyder* and *Geo. F. Baer,* for defendant in error.—The voluntary conveyance to the defendant, from his father, who was indebted at the time, was not fraudulent and void *per se.* There being evidence that the grantor had other property more than sufficient to satisfy the debt and out of which the debt was in fact fully satisfied, it was proper to submit the evidence to the jury to find what the facts were, and to determine whether the conveyance was made with any design to hinder, delay, or defraud the creditor.

The doctrine of Spirett v. Willows, 11 Jur. N. S. 70, and Reade v. Livingston, 3 Johns. Ch. 500, 8 Am. Dec. 520; Jackson *ex dem.* Van Wyck v. Seward, 5 Cow. 67, 8 Cow. 406.

A deed from a parent to a child, for the consideration of love and affection, is not absolutely void as against creditors. The want of a valuable consideration is a badge of fraud; but that it is only presumptive and not conclusive evidence of it, and may be met and repelled by other evidence. Hinde v. Longworth, 11 Wheat. 199, 6 L. ed. 454.

A voluntary conveyance, made by a person not indebted at the time, in favor of his wife or children, cannot be impeached by subsequent creditors, upon the mere ground of its being voluntary. It must be shown to have been fraudulent, or made with a view to future debts. And, on the other hand, the mere fact of indebtment at the time does not, *per se,* constitute a substantive ground, to avoid a voluntary conveyance for fraud, even in regard to prior creditors. The question whether it is fraudulent or not is to be ascertained, not from the mere fact of indebtment at the time alone, but from all the circumstances of the case. And if the circumstances do not establish fraud, then the voluntary conveyance is deemed to be above all exception. 1 Story, Eq. Jur. § 362.

If a parent makes an advancement to his child, and honestly and fairly retains in his hands sufficient property to pay all his existing debts, the child will not be bound to refund, even though the parent does not pay his debts existing at the time of the advancement. Van Wyck v. Seward, 6 Paige, 62.

There is, as applicable to voluntary conveyances made on a meritorious consideration, as of blood and affection, no absolute

presumption of fraud which entirely disregards the intent and purpose of the conveyance, if the grantor happened to be indebted at the time it was made, but that such a conveyance under such circumstances affords only prima facie or presumptive evidence of fraud, which may be rebutted and controlled. Lerow v. Wilmarth, 9 Allen, 386.

A voluntary conveyance, in consideration of blood and affection, by a person not indebted or not in embarrassed circumstances, but leaving ample means in his hands open to attachment, to pay all his debts, is good against creditors, if made bona fide. Whether it was bona fide in such case or not is a question of fact for the jury, upon consideration of all the circumstances attending it. Pomeroy v. Bailey, 43 N. H. 118.

In Connecticut and Vermont the same rule prevails. Salmon v. Bennett, 1 Conn. 525, 7 Am. Dec. 237; Brackett v. Wait, 6 Vt. 411.

But the question has been definitely settled in Pennsylvania.

A voluntary conveyance to a child, by a father who is indebted at the time, is not *ipso facto* fraudulent and void under the statute of 13 Elizabeth; if the grantor had other property at the time, or was otherwise of sufficient ability to pay all his debts, it will be referred to a jury, to determine whether there was any design to defraud creditors; if there was not, the conveyance is valid. Chambers v. Spencer, 5 Watts, 404; Posten v. Posten, 4 Whart. 42; Sanders v. Wagonseller, 19 Pa. 252.

PER CURIAM:

We have considered the twenty specifications of error, and cannot sustain any of them. There is no error in the answers to the points submitted, nor in the rulings relating to the admission of evidence. The charge was not misleading and the case was correctly submitted to the jury.

Judgment affirmed.